UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DOUGLAS GREENMAN, # 687910, | |
| Plaintiff, | Case No. 1:10-cv-549 |
| v. | Honorable Robert Holmes Bell |
| PRISONER HEALTH SERVICES, et al., | **OPINION** |
| Defendants. | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint, as amended (docket # 8), is based on conditions of his confinement at the Florence Crane Correctional Facility (ACF). The defendants are Prisoner Health Services, Inc. (PHS), a corporation providing health care services to MDOC prisoners, and Raymond Gelabert, M.D. Plaintiff alleges that defendants failed to provide him with adequate pain medication in violation of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause.[1] Plaintiff seeks damages and declaratory and injunctive relief.

The matter is before the court on defendants' motion for summary judgment. (docket # 40). On July 28, 2011, plaintiff filed his response. (docket # 45). On August 15, 2011, defendants filed a reply brief (docket # 46) in which they objected to all the exhibits plaintiff attached to his response. *See* FED. R. CIV. P. 56(c)(2). Upon review, the court sustains defendants' objections. However, even assuming that plaintiff's exhibits could be considered, the result would be unaltered.

---

[1] All other claims were dismissed on July 23, 2010. (docket #s 10, 11).

Plaintiff has not presented evidence sufficient to raise a genuine issue of fact for trial, and defendants are entitled to judgment in their favor as a matter of law. Defendants' motion for summary judgment will be granted and judgment will be entered in defendants' favor on all plaintiff's claims.

## Applicable Standards

### A.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Kizer v. Shelby County Gov't*, 649 F.3d 462, 466 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Services*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations

of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Bozung v. Rawson*, No. 10-1050, __ F.3d __, 2011 WL 4634215, at * 5 (6th Cir. Oct. 7, 2011). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

      A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier

of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to the portion of defendants' motion for summary judgment seeking dismissal of plaintiff's claims against Dr. Gelabert based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

      **B.**      **Defendants' Objections to Plaintiff's Exhibits**

Defendants have objected to the exhibits plaintiff filed in response to defendants' motion for summary judgment. FED. R. CIV. P. 56(c)(2). "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." FED. R. CIV. P. 56 (2010 Advisory Committee comments); *see ForeWord Mag., Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at * 2 (W.D. Mich. Oct. 31, 2011). Plaintiff has not addressed, much less carried his burden.

Defendants are correct that the "affidavits of truth" plaintiff filed in opposition to defendants' motion (docket # 45-1, ID#s 324-29) are not based on personal knowledge, do not set forth facts that would be admissible in evidence, and do not show that the affiants are competent to testify on the matters stated. FED. R. CIV. P. 56(c)(4). The "Affidavit in support of Plaintiff's Motion for Appointment of Counsel" (docket # 45-1, ID#s 330-31) is unsigned. The "Notice of Intention to File Claim Pursuant to MCL 600.2912b" (docket # 45-1, ID#s 332-33) is irrelevant. Plaintiff's amended complaint (docket # 8) does not allege a medical malpractice claim and his pleading does not invoke the court's supplemental jurisdiction. The December 1, 2010 deadline for amendment of the pleadings has long since passed. (docket # 19). All discovery in this case closed on May 30, 2011. (docket # 19). Plaintiff's unserved discovery requests (docket # 45-1, ID#s 336-

38, 341-42) do nothing to advance his claims. The letters from Timothy Piontkowski, D.O.[2] (docket # 45-1, ID#s 384, 339-40) do not satisfy the requirements for affidavits or declarations under Rule 56(c)(4). FED. R. CIV. P. 56(c)(4). Defendants' objections to plaintiff's exhibits are sustained.

      **C.**      **Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendant Gelabert has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to

---

[2] The May 31, 2008 letter (docket # 45-1, ID# 334) merely outlines plaintiff's medical conditions and the medications Dr. Piontkowski prescribed for plaintiff before plaintiff went to prison, none of which is disputed. Plaintiff filed this lawsuit on June 9, 2010, yet months earlier on March 29, 2010, Dr. Piontkowski wrote a letter, with no addressee, stating: "It appears that from the information given to me by the *plaintiff*, his pain is currently uncontrolled." (docket # 45-1, ID# 340) (emphasis added). Whatever plaintiff's undisclosed statement to Piontkowski may have been, it was not a statement for purposes of medical diagnosis or treatment. FED. R. EVID. 803(4). Piontkowski does not claim to have visited plaintiff in prison and conducted an examination. There is no foundation for an opinion that plaintiff's pain was "uncontrolled." On May 2, 2011, Dr. Piontkowski simply recorded plaintiff's post-incarceration complaints that the medications he had received in prison provided him with inadequate pain relief. (docket # 45-1, ID# 339). Dr. Piontkowski's parroting of plaintiff's subjective complaints is not a medical opinion. *See Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011). Dr. Piontkowski's letters make no attempt to address the specific pain medications that plaintiff received during his incarceration. Dr. Piontkowski provides no explanation or medical authority supporting plaintiff's assertion that the pain medication he received in prison was "inadequate."

show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 674 (6th Cir. 2009); *see also Vandiver v. Corr. Med. Servs.*, 326 F. App'x 885, 888 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures. In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II

respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations.");

*see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Facts**

The following facts are beyond genuine issue. A Tuscola County Circuit Court jury convicted plaintiff of "possession of less than 25 grams of a controlled substance (cocaine), MCL 333.7401(2)(a)(iv), second or subsequent offense, MCL 333.7413(2), two counts of felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b." *People v. Greenman*, No. 286060, 2009 WL 3683182, at * 1 (Mich. Ct. App. Nov. 5, 2009). Plaintiff was sentenced on May 27, 2008, and transferred into the custody of the Michigan Department of Corrections (MDOC). This lawsuit is based on the medical care plaintiff received while he was an inmate at the Florence Crane Correctional Facility (ACF) between December 16, 2009, and April 21, 2011, when plaintiff was released from prison on parole. The defendants are Prisoner Health Services, Inc. (PHS), a corporation providing health care services to MDOC prisoners, and Raymond Gelabert, M.D.

    1.    **Medical Care**

Plaintiff began incarceration in May 2008 at age 56, with hepatitis C, hypertension, insulin dependent diabetes mellitus, and degenerative disc disease (spondylosis). (Gelabert Aff. ¶ 5, docket # 42). On June 18, 2008, Steven Garver, PA-C, ordered Flexeril and Naprosyn in the same dosage and frequency as plaintiff reported receiving on the outside. He also ordered other medications related to conditions other than pain. On June 25, 2008, Garver conducted a physical examination. Plaintiff complained of moderate to severe lumbar pain. Plaintiff stated that before

he went to prison he had been receiving Oxycontin and Lorcet 10. These medications contain narcotics. Garver's plan was to request Vicodin (Lortab), but this plan was rejected on June 25, 2008, by Dr. Pandya, MDOC's Regional Medical Director. Dr. Pandya approved Ultram (Tramadol) 50 mg. TID (3 times per day). Ultram is a synthetic narcotic-like pain medication. It gives milder pain relief than Vicodin. (Gelabert Aff. ¶ 8, docket # 42, ID#s 295-300).

On July 11, 2008, plaintiff was transferred to ACF. Plaintiff's pain medications were Ultram (Tramadol) 50 mg. TID and Naproxyn, 500 mg. BID (2 times a day). He continued to receive medications for his other conditions, such as hypertension and diabetes. On August 19, 2008, Dr. Gelabert renewed plaintiff's Ultram prescription. (Gelabert Aff. ¶¶ 9, 10; docket # 42, ID#s 301-06). On August 20, 2008, plaintiff gave a history of chronic back pain and stated that before incarceration he had received prescriptions for Oxycontin and Lorcet. Dr. Gelabert's plan was to continue plaintiff's Ultram prescription and increase the dosage to 100 mg. TID. Dr. Gelabert's order concerning the Ultram was reviewed and deferred by Dr. Jeffrey Stieve, MDOC's Medical Director and head of the Pain Management Committee (PMC). Dr. Stieve directed that plaintiff's case be sent to the PMC for review. Dr. Stieve approved continuing Ultram at 50mg. TID and up to 2 grams of Tylenol per day. Tylenol (Acetaminophen) is an analgesic available over the counter. (Gelabert Aff. ¶¶ 11, 12).

The PMC has three members appointed by the MDOC. A fourth member is appointed by PHS.[3] The PMC's function is to make uniform the practices of prescribing pain medication in the Michigan prisons. While the PMC seeks to impose uniformity, it also seeks to

---

[3]"On June 3, 2011, Prison Health Services, Inc. became Corizon Health, Inc." (Def. Motion for Summary Judgment at 2, n.1, docket # 40, ID# 182). PHS is used throughout this opinion because the corporate name change occurred after the period at issue.

have adequate pain medication prescribed for the medical condition in question. A primary care provider may accept the PMC prescription or, if he or she disagrees with the PMC, the primary care provider may appeal to the Medical Services Advisory Committee. This is a larger committee with members from multiple disciplines, including general medicine, psychiatry, and pharmacy. A primary health care provider is not permitted to prescribe medication not approved by the PMC or the Medical Services Advisory Committee. (Gelabert Aff. ¶ 13).

On September 22, 2008, Dr. Gelabert saw plaintiff in connection with the Consultation Request to the PMC regarding appropriate medications for treatment of plaintiff's chronic back pain. (Gelabert Aff. ¶ 14, docket # 42, ID# 307). The PMC approved Tylenol not to exceed 2 grams per day, discontinuing Elavil, and continuing Ultram at 50 mg. TID and Flexeril l0 mg. BID. (Gelabert Aff. ¶ 14). Dr. Gelabert prescribed the medications authorized by the PMC. (Gelabert Aff. ¶¶ 4, 14).

On October 11, 2008, plaintiff sought an increased dosage of Flexeril. On October 15, 2008, Dr. Gelabert increased the Flexeril from one 10 mg. dose per day to two 10 mg. doses per day. (Gelabert Aff. ¶ 15; docket # 42, ID#s 308-11). On April 15, 2009, plaintiff was seen by Sandra Powell, RN. Plaintiff reported that the Flexeril and Ultram were not providing adequate pain relief. (Gelabert Aff. ¶ 16). On May 4, 2009, plaintiff complained of decreased pain control with his current medications. He requested that he be relieved from work details. Dr. Gelabert discontinued Naprosyn and switched plaintiff to the NSAID Mobic (Meloxicam) 15 mg., one in the morning. Dr. Gelabert also increased the Tylenol to two tabs TID, continued the Flexeril and Ultram at the current levels, and added Vitamin D, 1000 mg. QD (once per day). (Gelabert Aff. ¶ 17; docket # 42, ID# 273). On July 7, 2009, Gelabert discontinued the Mobic because it was not helping and

plaintiff reported experiencing cramps. Dr. Gelabert added Clinoril (Sulindac), 200 mg. BID, another type of NSAID, and increased the dose of Flexeril to two 10 mg. tabs BID. (Gelabert Aff. ¶ 18).

On September 30, 2009, plaintiff was examined by a physician's assistant. Her assessment was that he was experiencing GERD (gastric esophageal reflux, commonly referred to as "heartburn"). Her second assessment was that plaintiff was probably "cheeking"[4] his Ultram and Flexeril. She gave orders to crush these medications before administering them to plaintiff and to gradually discontinue the Flexeril by reducing it to one tab BID and then one per day until the prescription expired. Dr. Gelabert approved the plan. Plaintiff's prescription for Flexeril would expire on March 4, 2010, under this tapering regimen. (Gelabert Aff. ¶ 19).

On November 21, 2009, plaintiff was seen by Dr. Bhamini Sudhir. Plaintiff stated that he wanted his pain medications changed. Dr. Sudhir explained that she was unable to override the PMC and that she would schedule plaintiff to see Dr. Gelabert to resubmit the issue to the PMC. (Gelabert Aff. ¶ 20).

On December 15, 2009, Dr. Gelabert submitted another Consultation Request to the PMC to reevaluate plaintiff's chronic pain medication treatment plan. Dr. Gelabert's diagnosis was chronic low back pain secondary to multiple advanced arthritic changes at T8-T12 with severe spondylosis (associated with normal aging and meaning degenerative disc disease), poorly

---

[4]"Cheeking" is prison parlance for hiding medication without ingesting it. It is often followed by the sale of the secreted drug to other prisoners, with stronger medications, such as narcotics, having a higher market value. *See Johnson v. Richins*, No. 10-4171, 2011 WL 3677839, at * 1 (10th Cir. Aug. 23, 2011); *Chambers v. Eppolito*, No. 11-cv-355, 2011 WL 4436285, at * 2-3 (D. N.H. Aug. 24, 2011); *Maisano v. Gelabert*, 1:09-cv-99, 2011 WL 2945830, at * 6 (W.D. Mich. June 27, 2011); *Jones v. Caruso*, No. 1:10-cv-812, 2011 WL 1467647, at * 2 (W.D. Mich. Apr. 14, 2011).

controlled. Plaintiff's medications were Flexeril, Vitamin D, Ibuprofen, and Ultram, as well as medications for hypertension and diabetes. (docket # 42 , ID#s 280-82; Gelabert Aff. ¶ 22).

On January 20, 2010, the PMC ordered the discontinuation of Ultram and Flexeril, noting that they were not appropriate for arthritic pain. Flexeril is a muscle relaxer. It is prescribed for short-term use to interrupt the pain cycle that can occur with acute injuries. It should not be used for the long-term treatment of joint type pain. It also is subject to being abused, as it can cause a "high." Ultram is a synthetic narcotic and also subject to being abused. Narcotics and synthetic narcotics are not typically prescribed for long-term use for chronic pain, except in the treatment of cancer. Plaintiff's medical conditions did not require the use of narcotic or synthetic narcotic pain medications. (docket # 42, ID#s 280-83; Gelabert Aff. ¶ 23).

On February 22, 2010, plaintiff was brought to the Health Center in a wheelchair after allegedly falling. He reported that he started to stand up, blacked out, and argued that the incident would not have happened if he was still taking Ultram. Plaintiff's statement was not consistent with his clinical presentation and the effect of discontinuing Ultram. Objectively, there was no bruising, redness, or deformity to the head, chest, shoulder, elbow, hip or leg, although plaintiff reported some tenderness. Otherwise, the physical examination was normal. Plaintiff's pain reports were out of proportion to the clinical findings, and he was treated with conservative measures such as warm showers and compresses. (docket # 42, ID#s 284-85; Gelabert Aff. ¶ 24).

On April 13, 2010, Dr. Gelabert met with plaintiff to explain that the PMC had changed his prescriptions to add Pamelor (Nortriptyline HCL) 25 mg. at bedtime. He was also prescribed Tylenol 325 mg. two tabs TID up to a total of 2 grams per day followed by rotating NSAIDs every three to four months at daily maximum doses and Salsalate 750 mg. one tab TID.

The Pamelor was to be titrated (increased) until effective, not tolerated, or reached 100 mg. per day. Plaintiff reported feeling "so so" at this time. Pamelor is a tricyclic antidepressant (TCA). It is commonly used to treat chronic pain and is an effective and safer alternative to long-term use of narcotics or synthetic narcotics. It is less likely to be abused and also avoids side effects, such as the central nervous system suppression associated with narcotics. It is used both inside and outside the prison setting for this purpose. (docket # 42, ID#s 290, 292-93; Gelabert Aff. ¶ 25).

On April 22, 2010, plaintiff reported that the Pamelor and Salsalate were not working and that he wanted his medications adjusted. Plaintiff stated that he had been taking these medications for eight days and they should be working. Dr. Gelabert noted that these long-term pain treatment medications would not be expected to be effective in only eight days. (docket # 42, ID# 291; Gelabert Aff. ¶ 26; docket # 1-1, ID# 41).

On April 27, 2010, Bhamini Sudhir, M.D., reviewed plaintiff's chart and noted his complaints that the pain medication was not providing adequate relief. She increased plaintiff's Pamelor to 50 mg. per day. (docket # 42, ID# 289; Gelabert Aff. ¶ 27; docket # 1-1, ID# 42).

On May 13, 2010, Dr. Gelabert saw plaintiff and determined that his chronic back pain was improving. Dr. Gelabert noted that plaintiff had good flexibility and was doing exercises to increase his range of motion. Gelabert reassured plaintiff and encouraged him to take all the pain medications as prescribed and to return to the clinic as needed. (docket # 42, ID# 288). On May 27, 2010, Dr. Gelabert noted that plaintiff reported no side effects from the Pamelor, but insisted that it was not relieving his pain. Plaintiff reported functioning well in the free world with Vicodin. Dr. Gelabert increased the Pamelor to 75 mg. per day. Dr. Gelabert counseled plaintiff that the medical

literature reported Pamelor to be an effective treatment for chronic pain. (docket # 42, ID# 287; Gelabert Aff. ¶ 29).

On June 16, 2010, Dr. Gelabert saw plaintiff and they discussed his pain management plan. Dr. Gelabert noted that the PMC had recommended discontinuing Ultram, Flexeril, and Vitamin D, and that plaintiff was now taking Disalcid (Salsalate), Tylenol, and Pamelor at 75 mg. Dr. Gelabert noted that plaintiff's treatment was consistent with the medical literature for chronic pain. He increased the Pamelor to 100 mg. (docket # 42, ID# 286; Gelabert Aff. ¶ 30). Dr. Gelabert "extensively explained" this to plaintiff. Dr. Gelabert did not ignore plaintiff's need for pain medication for his chronic back pain. He followed through with the PMC on several occasions in response to plaintiff's complaints that he needed additional medication to control his pain. The medications prescribed by Dr. Gelabert were consistent with medical literature concerning the management of chronic pain. (Gelabert Aff. ¶ 31).

    **2.**    **Grievances**

On February 23, 2010, plaintiff filed a grievance against Physician's Assistant Oulette regarding the perceived inadequacy of the pain medication he was receiving. (Grievance No. ACF-2010-02-0262-12F3, docket # 40-3, ID# 226; docket # 1-1, ID# 14). The grievance was denied at Step I on March 12, 2010. The Step I response noted that plaintiff had received seven different pain or adjunct medications since June of 2008. In January 2010, the PMC had determined that Ultram and Flexeril were not appropriate for arthritic pain and discontinued those medications. (docket # 40-3, ID# 227). Plaintiff's Step II appeal was denied on April 13, 2010. The Step II response noted that the PMC had considered plaintiff's case, modified his medications, and that plaintiff had an

upcoming appointment for review of his medication issues. (*Id.,* ID# 225). Plaintiff's Step III appeal was denied on May 27, 2010. (*Id.*, ID# 223).

On March 4, 2010, ACF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. ACF-10-03-0294-12E. (docket #1-1, ID# 11; docket # 40-3, ID# 213). Plaintiff complained that two physician's assistants and PHS were not providing adequate care for his hepatitis C. (*Id.*) On March 29, 2010, plaintiff's grievance was denied at Step I. (*Id.*). The Step II grievance appeal was denied on April 29, 2010. The Step II response noted that plaintiff had been evaluated by a medical care provider on March 29, 2010 and lab tests had been ordered. The medical provider was in the process of obtaining information to make the necessary medical determination whether plaintiff's hepatitis C required treatment. (docket # 1-1, ID# 12; docket # 40-3, 212). On June 9, 2010, plaintiff's grievance was denied at Step III. The medical practitioners had ordered laboratory tests and would determine further treatment based on those results. (docket # 40-3, ID# 210).

On June 9, 2010, plaintiff filed his complaint.

## **Discussion**

### 1. **Mootness**

On April 22, 2011, plaintiff was released from prison on parole. His claims for injunctive and declaratory relief against defendants are therefore moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

**2.    Dr. Gelabert**

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the subjective component of his Eighth Amendment claim against Dr. Gelabert.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "The objective component requires a plaintiff to show that 'the medical need at issue is sufficiently serious.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)); *Jones v. Muskegon County*, 635 F.3d 935,

941 (6th Cir. 2010). A reasonable trier of fact could find that plaintiff's medical condition and the alleged deprivation were sufficient to satisfy the objective component of an Eighth Amendment violation.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 987-88 (6th Cir. 2010); *Dotson v. Phillips*, 385 F. App'x 468, 471 (6th Cir. 2010) ("Mere negligence does not amount to deliberate indifference, as medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims . . . ."). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d at 169; *Westlake*, 537 F.2d 860 n.5.

Plaintiff's contentions in this case make a mockery of the Eighth Amendment standard, which requires that responsible medical officials recklessly "delay or deny" needed treatment to a prisoner, resulting in the wanton and unnecessary infliction of pain. The undisputed medical record shows a constant -- almost daily -- attention to plaintiff's complaints about his medications. Like all physicians, in and out of the prison setting, Dr. Gelabert was required to balance the need for pain relief against the dangerous side effects, including potential for addiction, posed by most strong pain medications. The Eighth Amendment has virtually no bearing on this process, as long as the physician is acting pursuant to arguably reasonable medical protocols.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against defendant Dr. Gelabert. The record shows that defendant treated plaintiff's condition on an ongoing basis with appropriate medications. Plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by Dr. Gelabert falls far short of supporting an Eighth Amendment claim. *See Lyons v. Brandly*, 430 F. App'x 380-81 (6th Cir. 2011); *see also Almond v. Pollard*, No. 11-1555, 2011 WL 4101460, at * 3 (7th Cir. Sept. 15, 2011) (The prisoner "may disagree with the course of treatment chosen, but that disagreement does not amount to deliberate indifference.") (citing *Alspaugh v. McConnell*, 643 F.3d at 169). The court finds that defendant

Gelabert is entitled to judgment in his favor as a matter of law.  No reasonable trier of fact faced with this record could ever find that anyone was deliberately indifferent to plaintiff's medical needs.[5]

### 3. Prison Health Services, Inc.

Plaintiff seeks to hold PHS vicariously liable for the acts of its employee, Dr. Gelabert.  A private corporation cannot be held liable under § 1983 on the basis of respondeat superior or vicarious liability.  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Rather, the plaintiff must establish a policy or custom that caused the constitutional violation.  *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).  Plaintiff has not alleged facts or presented evidence of a custom or policy sufficient to establish entitlement to relief against PHS. *See Barnett v. Luttrell*, 414 F. App'x 784, 790 (6th Cir. 2011); *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at * 2 (6th Cir. Jan. 23, 2009).

### Conclusion

For the foregoing reasons, defendants' motions for summary judgment (docket # 40) will be granted and a final judgment entered in defendants' favor on all plaintiff's claims.

Dated: December 8, 2011                           /s/ Robert Holmes Bell
                                                  ROBERT HOLMES BELL
                                                  UNITED STATES DISTRICT JUDGE

---

[5]On an alternative basis, defendant Gelabert would be entitled to dismissal of plaintiff's claims because plaintiff did not exhaust his available administrative remedies against Dr. Gelabert before filing this lawsuit as required under 42 U.S.C. § 1997e(a).